IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALISA D.,[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 22 C 3828** |
| **v.** | ) | |
| | ) | **Magistrate Judge Laura K. McNally** |
| LEE DUDEK, | ) | |
| Acting Commissioner of | ) | |
| Social Security,[2] | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**ORDER[3]**</u>

Before the Court is Plaintiff Alisa D.'s memorandum in support of summary

judgment, asking the Court to remand the Administrative Law Judge's ("ALJ") decision

denying her applications for disability benefits (Dkt. 12: Pl. Mem. in Support of Summ.

---

[1] The Court in this order is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Curt.

[2] The Court substitutes Lee Dudek for his predecessor, Michelle A. King, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On August 1, 2022, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to the magistrate judge for all proceedings, including entry of final judgment. (Dkt. 9.)

J., "Pl. Mem.") and Defendant's motion and brief in support of summary judgment

(Dkt. 19: Def. Mot. for Summ. J.; Dkt. 20: Def. Mem. in Support of Summ. J.: "Resp.")

## I.    Procedural History

 Plaintiff applied for disability insurance benefits on January 28, 2020, alleging

she became unable to work on November 1, 2016. (R. 193.) She later amended her onset

date to March 19, 2020. (R. 44.)  Her date last insured is December 31, 2025. (R. 15.)

Plaintiff's claims were initially denied on October 28, 2020 and on reconsideration on

January 22, 2021. (R. 78, 102.) She then appeared with her counsel for a telephone

hearing before ALJ Lovert Bassett on September 22, 2021. (R. 34-77.) At the hearing,

Plaintiff and a vocational expert testified.

On October 5, 2021, the ALJ issued a decision finding Plaintiff not disabled, and

she subsequently appealed. (R. 13-28.)[4] After considering the parties' briefs and

evidence, the Court grants Defendant's motion for summary judgment and denies

Plaintiff's motion.

## II.   ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step

sequential evaluation process to Plaintiff's claims. At Step One, he found that the

Plaintiff had not engaged in substantial gainful activity since March 19, 2020. (R. 15.) In

---

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

making this finding, the ALJ noted that Plaintiff had been working part time as a receptionist at a skilled nursing facility for the past two and one-half years, but that her pay never exceeded statutory levels. (*Id.*) At Step Two, the ALJ determined that Plaintiff had the severe impairments of obesity, diabetes mellitus, sarcoidosis, dilated nonischemic cardiomyopathy, and obstructive sleep apnea. (R. 16.)

At Step Three, the ALJ found that none of Plaintiff's impairments met a Listing. (*Id.*) Before Step Four, the ALJ determined that Plaintiff the residual functional capacity to perform light work except that she could frequently climb ramps and stairs, occasionally balance, stoop, crouch, kneel, and crawl, not climb ladders, ropes, or scaffolds, and have no exposure to pulmonary irritants. (R. 18.) At Step Four the ALJ found that Plaintiff was able to perform her past relevant composite work as a data entry clerk and labeler. (R. 26.) Therefore, the ALJ found that Plaintiff was not disabled. (R. 27.)

## III. Legal Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022) An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054.

The Seventh Circuit added that "[a]t times, we have put this in the shorthand terms of saying an ALJ needs to provide a 'logical bridge from the evidence to his conclusion.'" *Id*. (citation omitted). The Seventh Circuit further has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable

evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

## IV. Analysis

Plaintiff makes three arguments in favor of remand. First, she contends that the ALJ erred at Step Four in finding Plaintiff could perform her past work. (Pl. Mem. at 8.) Next, she argues that the ALJ's consideration of her subjective symptoms was patently wrong. (Pl. Mem. at 10.)[5] Finally, Plaintiff argues that the ALJ's assessment of the opinion evidence violated social security regulations. (R. 14.) The Court disagrees and therefore affirms the ALJ's decision.

### A. The ALJ Supported the Residual Functional Capacity Determination with Substantial Evidence.

Plaintiff argues that the ALJ erred by "tailoring" the residual functional capacity determination to Plaintiff's description of her past work. (Pl. Mem. at 8.) That is, she contends that the ALJ did not incorporate into his assessment all of Plaintiff's limitations. This is essentially an attack on the ALJ's determination of Plaintiff's residual

---

[5] Plaintiff actually argues that the ALJ's subjective symptom analysis was not supported by substantial evidence. The proper standard is whether the ALJ's determination is "patently wrong," and that is the standard the Court will use to decide this issue. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

functional capacity. After considering the evidence and the parties' arguments, the Court finds that the ALJ did not err.

The ALJ considered nearly all of the medical evidence in determining Plaintiff's residual functional capacity. Specifically, he assessed the following:

- Plaintiff's recovery from COVID-19 in March 2020 without complications, including treatment notes that her medical problems were stable and well-controlled (R. 24);

- Plaintiff's report that she was sleeping "okay" despite obstructive sleep apnea once she began using a CPAP machine in December 2020 (*Id.*);

- Treatment notes that consistently advised her to increase activity and watch her diet to combat her obesity but did not recommend additional weight-loss treatment (*Id.*);

- Diagnoses of diabetes and sarcoidosis that were both generally well managed and stable on prescribed treatment (*Id.*);

- A November 2020 hospitalization for congestive heart failure suspected to be secondary to increased dietary sodium intake. The ALJ noted that Plaintiff requested a return-to-work letter less than a week after her hospitalization and reported that she was feeling much better. (*Id.*)

- Improvement in her left-ventricle injection fraction to 50 percent (which is in the borderline normal to mildly reduced range) by late November 2020 (*Id.*);

- Medical exams in December 2020 and April 2021 that noted stable breathing and leg edema, normal cardiology and respiratory systems, normal range of motion, gait, and strength, and otherwise unremarkable findings (*Id.*);

- Activities that included lighting a bonfire and barbequing within days of leaving the hospital for congestive heart failure, feeding her dog, working part-time, engaging in some shopping, and sorting and organizing a number of inherited family belongings (R. 25);

- Persuasive medical opinions from two state agency doctors that Plaintiff was able to perform light work with a few postural limitations (*Id.*);

- A consultative examination from October 2020 that assessed Plaintiff as being able to sit and stand, walk greater than 50 feet without assistance, handle objects, and lift and carry without limitation. The examining doctor noted that Plaintiff had normal range of motion in all joints, no edema in her extremities, 5/5 strength, and complaints of low back pain with no objective findings. (*Id.*);

- A generally persuasive opinion by Plaintiff's treating doctor that assessed Plaintiff's prognosis as "fair." The doctor opined Plaintiff could stand more than three hours at one time, walk more than three hours at one time, did not need to take unscheduled breaks, and would not experience interference with attention and concentration because of pain or stress. (R. 26); and,

- The fact that Plaintiff was working part time as a receptionist at the time of the hearing (R. 15.)[6]

By incorporating the above evidence into his analysis, the ALJ sufficiently articulated his reasons for determining Plaintiff's residual functional capacity.

After discussing the medical evidence described above, the ALJ reviewed the functional limitations of Plaintiff's former position as a data entry clerk and labeler. For example, the ALJ cited Plaintiff's testimony that at that job she had been seated for six hours and moved around the rest of the time. (R. 26.) The ALJ also noted that the job required Plaintiff to bend down at the waist, with increased frequency during busy

---

[6] The part-time receptionist job Plaintiff was performing at the time of the hearing is not the "composite past relevant work" the ALJ considered at Step Four. That job was for a shipping company, packing and sending diamonds worldwide. (R. 27.) Plaintiff worked at that job full-time during the relevant period and for a long enough time to learn it. It was a composite job because it had significant elements of more than one job from the Dictionary of Occupational Titles.

periods. The job did not require kneeling or crawling and took place in a small office without any pulmonary irritants. (R. 27.) Plaintiff offered no evidence to corroborate her testimony that she was unable to perform the tasks required by her work.

The ALJ thoroughly considered the medical evidence in the record, and he paired that analysis with an evaluation of the evidence regarding Plaintiff's performance at her former position. Accordingly, the Court finds that the ALJ's residual functional capacity determination was supported by substantial evidence and therefore not in error.

### B.     The ALJ's Subjective Symptom Analysis was not Patently Wrong.

Plaintiff next argues the ALJ erred by not sufficiently, in her view, crediting her testimony regarding her subjective symptoms. The Court will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is "patently wrong, which means that the decision lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). The Court concludes that Plaintiff has not met that standard.

The ALJ acknowledged Plaintiff's testimony about her impairments. He noted Plaintiff's allegations that she was unable to work full-time at her current receptionist job because she was exhausted by the end of the day. (R. 23.) The ALJ also recognized Plaintiff's contentions that she could walk less than a block due to shortness of breath and other pain, had difficulty walking long distances or standing, and could not lift five

pounds. (*Id.*) He noted that Plaintiff took ibuprofen for leg and back pain and that her only prescription medication was for her heart. (*Id.*)

The ALJ determined that the medical and other evidence did not support the Plaintiff's allegations of severity. As described above, the ALJ addressed and discussed nearly all of the medical evidence, and Plaintiff does not point out any that he missed. This included evidence related to her two hospitalizations, medical examinations, treatment notes, a consultative examination, Plaintiff's daily activities, and the opinions of three doctors. The Court cannot conclude that the ALJ erred in how he weighed this evidence against Plaintiff's subjective complaints regarding severity.

Plaintiff argues the ALJ's analysis of her subjective symptoms was patently wrong because (1) he failed to consider the potential effects of "long Covid," (2) he wrongly relied on the "stability" of Plaintiff's symptoms, and (3) he wrongly evaluated Plaintiff's daily activities. None of Plaintiff's arguments have merit.

First, the ALJ did not improperly fail to assess whether Plaintiff had limitations stemming from "long Covid." Plaintiff offered no evidence the that she actually had long Covid. It is well-settled that the claimant bears the burden of proving his disability, *see Eichstadt v. Astrue*, 534 F.3d. 663, 668. (7th Cir. 2008), and she failed to meet that burden.

Even if Plaintiff did have long Covid, a "diagnosis does not equal disability, and a claimant must prove that specific functional limitations arise from his impairments."

9

*Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) (holding that the claimant must prove impairments "imposed particular restrictions on her ability to work"). As with diagnosis, plaintiff failed to establish disability from long Covid.

The ALJ acknowledged and addressed all of the evidence Plaintiff contends stemmed from her Covid diagnosis. Specifically, he assessed her complaints of shortness of breath, exhaustion after working, and alleged lung problems. Balanced against Plaintiff's subjective complaints, the ALJ noted medical examinations where Plaintiff's lung functioning was normal. (R. 22.) Moreover, even after being hospitalized for breathing problems due to congestive heart failure, Plaintiff recovered quickly. Based on this record, the ALJ did not err in giving no weight to Plaintiff's allegations about limitations stemming from Covid.

The ALJ also did not err in concluding that Plaintiff's obesity and diabetes were not as severe as she alleged because these impairments were "stable." (Pl. Mem. at 11-12.) The ALJ acknowledged that although Plaintiff's obesity was noted throughout the medical record (R. 24.), the only treatment Plaintiff's doctors suggested for her obesity were to increase exercise and watch her diet. (*Id.*) No treater recommended more aggressive treatment, such as bariatric surgery. (*Id.*) Not only was Plaintiff's BMI stable, but physical examinations showed no gait or strength abnormality secondary to obesity. (*Id.*) And finally, the ALJ accounted for the opinion of Plaintiff's treating doctor that her obesity interfered with crouching, stooping, and bending by limiting her to only

10

occasionally engaging in those activities. Plaintiff offers no evidence that she required further functional limitations.

With respect to Plaintiff's diabetes, the ALJ recognized that it was generally well managed with medication alone. He noted that Plaintiff had an almost entirely normal endocrinologist examination in April 2021. (R. 23.) Despite a high A1C level in August 2021, doctors did not adjust Plaintiff's medication. In short, it was not improper for the ALJ to consider Plaintiff's treatment for obesity and diabetes as part of his credibility analysis.

The ALJ's consideration of Plaintiff's daily activities was also not patently wrong. Contrary to Plaintiff's argument, the ALJ did not equate her ability to perform tasks such as taking care of her dog, shopping, lighting a bonfire, and barbequing to the ability to perform full time work. Instead, the ALJ considered them as evidence that her symptoms were not as severe as she alleged. There was no error in the ALJ's consideration of these activities as part of the credibility analysis.

**C.  The ALJ Properly Evaluated the Opinion of Plaintiff's Treating Doctor**

Plaintiff argues that the ALJ did not substantially support the weight he gave the opinion of his treating doctor, Carole Prete, M.D. (Pl. Mem. at 14-15.) Interestingly the ALJ found the bulk of Dr. Prete's opinion persuasive, including her assessment that Plaintiff could stand for more than three hours at a time and walk more than three hours at a time. (R. 26.) In fact, the only part of Dr. Prete's opinion that the ALJ rejected

was her determination that Plaintiff would only be able to work at 80 percent efficiency (on a full-time basis).

The ALJ found that this part of Dr. Prete's opinion was not supported by the objective evidence she cited: a normal clinical examination from 2020. (*Id.*) The opinion was also inconsistent with Dr. Prete's statement that Plaintiff's pain and stress would rarely interfere with the attention and concentration needed to perform simple work tasks. (*Id.*) Finally, the ALJ also found this part of Dr. Prete's opinion inconsistent with her assessment that Plaintiff would be off-task no more than 10 percent or less during an eight-hour workday. (*Id.*)

In considering Dr. Prete's opinion, the ALJ was required to evaluate its persuasiveness "based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). An ALJ must explain how he considered the first two factors (supportability and consistency) and may but is not required to explain his consideration of the other factors. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)).

12

"Consistency assesses how a medical opinion squares with other evidence in the record." *Id*. (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ pointed to specific evidence that undermined the part of Dr. Prete's opinion that Plaintiff could only work at 80 percent efficiency. First, he pointed out that there was no support for the opinion because the only objective evidence the doctor referenced was a normal clinical evaluation from 2020. (R. 26.) As to consistency, the ALJ noted the opinion conflicted with the doctor's statements that Plaintiff's pain and stress would rarely interfere with her attention and concentration and also with Dr. Prete's opinion that Plaintiff would be off-task ten percent or less during an eight-hour workday. (*Id*.) Because the ALJ considered both supportability and consistency, he more than adequately supported with substantial evidence his decision to reject Dr. Prete's assessment of Plaintiff only being able to work at 80 percent efficiency. Plaintiff's argument that the ALJ did not properly consider all of Plaintiff's impairments is a request to reweigh the evidence, which the Court will not do. *Chavez v. O'Malley*, 96 F.4th at 1021.

In sum, the ALJ substantially supported his determination that Plaintiff was able to perform her past work and therefore was not disabled.

## CONCLUSION

For the reasons explained above, the Court denies Plaintiff's motion for summary judgment (Dkt. 12) and grants Defendant's motion to affirm the ALJ's decision. (Dkt. 19.)

**SO ORDERED.**

**ENTER:**

**LAURA K. MCNALLY**
**United States Magistrate Judge**

**DATED: March 31, 2025**